# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONDALE D. TENNER,

    Petitioner,

v.

DYLON RADTKE,

    Respondent.

Case No. 20-CV-569-JPS

**ORDER**

**1. INTRODUCTION**

On April 7, 2020, Petitioner Rondale D. Tenner ("Tenner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. On March 5, 2021, the Court screened Tenner's petition, determining that two out of the five grounds that Tenner presented were properly exhausted: (1) that "Trial Counsel was prejudicially ineffective for failing to cross-examine state witness Misty Beilke as to her prior criminal history which [ostensibly] went towards her credibility" in violation of the Sixth Amendment ("Ground One"); and (2) that "New[ly] Discovered Evidence of testimony of Ivan Boyd[] would undermine the outcome of the trial" ("Ground Two"). ECF No. 6 at 3, 9 (quoting ECF No. 1 at 6–8). On April 1, 2021, Tenner filed an amended petition for writ of habeas corpus as to only the exhausted Grounds One and Two. ECF No. 10.

On February 10, 2022, Respondent Dylon Radtke ("Respondent") moved to dismiss Tenner's amended petition. ECF No. 18. The motion is now fully briefed. ECF Nos. 19, 22, 23. Prior to filing his response brief, Tenner filed a motion for a 30-day extension of time to file the brief. ECF No. 20. The Court grants Tenner's motion for extension of time, ECF No.

20, and has considered Tenner's response brief, ECF No. 22, in reaching its decision. For the reasons explained below, Tenner's amended petition must be denied.

2.   **BACKGROUND**

Tenner is currently serving a 58-year sentence for a Wisconsin conviction for first degree reckless homicide while using a dangerous weapon, armed robbery with use of force, and possession of a firearm by a felon. ECF No. 19-1 at 1–6.[1] The conviction arose out of a drug deal that escalated into armed robbery and homicide. *Id.* at 2. When the police arrived at the scene, they found one victim lying on the floor, who they pronounced dead by gunshot wound. *Id.* The surviving victim, D.J., reported that the perpetrator had robbed him. *Id.* at 3. In light of the police investigation, Tenner was charged with the aforementioned crimes. *Id.*

In September 2014, the matter proceeded to a jury trial. *Id.* During the trial, D.J., Misty Beilke ("Beilke") (who Tenner was dating at the time of the crime), and a third witness testified against Tenner. *Id.* at 4. As a result of this testimony, along with a host of other evidence, the jury convicted Tenner in October 2014. *Id.*

Following his conviction, Tenner filed a notice of intent to pursue postconviction relief on November 17, 2014, and, after a number of extensions, he filed a motion for postconviction relief on June 22, 2017. In his postconviction motion, Tenner argued (1) that his trial counsel was ineffective for failing to impeach Beilke using her criminal record, and (2) that he had obtained newly discovered evidence, namely an affidavit

---

[1] The majority of the facts in this Order come from the Wisconsin Court of Appeals' recitation. ECF No. 19-1 at 1–6; *State v. Tenner*, 927 N.W.2d 931 (Wis. Ct. App. 2019).

from Ivan Boyd ("Boyd"), who claimed that D.J. had confessed to committing the crime to him. *Id.* at 4–5.

Tenner met Boyd, a fellow inmate at the Dodge Correctional Institution, in April 2016, while they were both staffed as kitchen workers. ECF No. 22 at 4; ECF No. 22-1 at 212. One day, after Boyd asked Tenner "why [he] was locked up," Tenner informed Boyd that "a guy he met at a store, Fast and Friendly, lied on him at his trial." ECF No. 22-1 at 212. According to Boyd, "[t]his immediately rang a bell with [Boyd], because during February of 2013, [he] had run into a guy in the City of Milwaukee jail, who mentioned the Fast and Friendly Store to [him] too." *Id.* Thereafter, Boyd signed an affidavit dated February 20, 2017, in which he avers that the "guy" with whom he had a conversation in February 2013 was D.J. *Id.*[2] Boyd's affidavit states that, while in the City of Milwaukee jail, he was placed in a cell with D.J. *Id.* at 213. Out of the blue, D.J. came up to him and blurted out, "I killed my best friend." *Id.* D.J. then told Boyd that he pinned the murder on Tenner (who was known as "Rock"), a man who he had met at the Fast and Friendly store. *Id.* Boyd's affidavit goes on to provide details regarding the underlying drug transaction. *Id.* at 213–14. D.J. further allegedly asked Boyd if he thought the police would "buy [his] story" that Tenner committed the crime. *Id.* at 214.

The Circuit Court in Milwaukee County held an evidentiary hearing as to both grounds of Tenner's June 22, 2017 motion for post-conviction relief: (1) ineffective assistance of counsel regarding failure to impeach Beilke, and (2) newly discovered evidence in the form of Boyd's affidavit.

---

[2]D.J. was arrested after the shooting and charged with keeping a drug house. ECF No. 19-2 at 5 n.2.

ECF No. 19-2 at 4–5. At the hearing, Tenner's trial counsel, Charles Glynn ("Glynn"), testified that his decision to not impeach Beilke was based on trial strategy. *Id.* at 5. Boyd's testimony also revealed that Boyd had a history of submitting false evidence in several previous instances (one of which occurred in federal court). *Id.* at 6. The Circuit Court denied Tenner relief, finding that Glynn's strategy to not impeach Bielke was a reasonable trial tactic and that Boyd's testimony was that of a "pure hustler" and completely incredible. *Id.* The Circuit Court further held, under *State v. Plude*, 750 N.W.2d 42 (Wis. 2008), that Tenner had not demonstrated a reasonable probability that if the jury heard the newly discovered evidence, it would have had a reasonable doubt as to Tenner's guilt. *Id.* (citing *Plude*, 750 N.W.2d at 48 (after a defendant proves four elements as to his newly discovered evidence, "it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt")).

Tenner appealed the decision. ECF No. 1-1 at 1. On March 12, 2019, the Wisconsin Court of Appeals affirmed on both grounds. *Tenner*, 927 N.W.2d at 931; ECF No. 19-2. As to Tenner's argument regarding Boyd's affidavit, the Wisconsin Court of Appeals relied on the Wisconsin Supreme Court's intervening decision in *State v. McAlister*, 911 N.W.2d 77 (Wis. 2018), in lieu of resting purely on the *Plude* "reasonable probability" standard applied by the Circuit Court. ECF No. 19-2 at 10. *McAlister* holds that, if newly discovered evidence is in the form of an affidavit, it must be corroborated by *other newly discovered evidence* in the form of "a feasible motive for the initial false statement" and "circumstantial guarantees of . . . trustworthiness." ECF No. 19-2 at 10 (quoting *McAlister*, 911 N.W.2d at 87). The Wisconsin Court of Appeals determined that a feasible motive for D.J.

to lie about the shooting was consistently raised throughout the trial (apparently, to make money and assist his girlfriend in concealing from her parents that she was at his home and had skipped school) and, therefore, was not newly discovered evidence. *Id.* at 11. Further, the Circuit Court had determined that Boyd's testimony was not trustworthy. *Id.*

Thereafter, Tenner filed a petition for review with the Wisconsin Supreme Court. ECF No. 19-3. In his petition before the Wisconsin Supreme Court, Tenner raised only his claim that he was entitled to a new trial based on newly discovered evidence, i.e., Boyd's affidavit. *Id.* Tenner did not present his ineffective assistance of counsel claim regarding impeachment of Beilke to the Wisconsin Supreme Court. *Id.* On June 11, 2019, the Supreme Court of Wisconsin denied review. *State v. Tenner*, 931 N.W.2d 534 (Wis. 2019); ECF No. 19-4.

3. **STANDARD OF REVIEW**

The federal habeas corpus statute "permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of habeas corpus only if the state court's decision with respect to that claim was: (1) "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004).

4. **ANALYSIS**

   4.1  **Ground One – Ineffective Assistance of Counsel**

At the outset, the Court notes that Tenner has procedurally defaulted on Ground One. The Seventh Circuit has provided recent instruction on procedural default:

> [A] claim might be procedurally defaulted when a petitioner fails to "fairly present" his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings. The complete round requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.

*Richardson v. Lemke*, 745 F.3d 258, 268–69 (7th Cir. 2014) (citations omitted).

"Fair presentment" requires that the petitioner fully present his federal claims to the state courts, giving the state courts a meaningful opportunity to pass on them. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). The factual and legal substance of what the petitioner presents to the federal and state courts must remain similar. *Id.* This defeats Ground One because Tenner did not present his ineffective assistance of counsel claim to the Wisconsin Supreme Court for review. ECF No. 19-3, Petition for Review to the Wisconsin Supreme Court, at 6 ("The first critical issue ['that trial counsel had been prejudicially ineffective for not impeaching the Defendant's girlfriend witness with her prior criminal record'] is not

presently before the Court."). Indeed, Tenner concedes in his response brief that he did not present the claim in his petition to the Wisconsin Supreme Court. ECF No. 22 at 2.

Tenner's procedural default may be excused if he can establish equitable grounds therefore. These include proving "[1] cause for and prejudice stemming from that default, or, . . . [2] that the denial of relief will result in a miscarriage of justice[.]" *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016). Respondent raises both grounds in his moving brief. ECF No. 19 at 5–8. Despite Respondent raising both grounds, Tenner does not argue cause or prejudice to excuse his default; he argues only miscarriage of justice based on his actual innocence. ECF No. 22 at 6 (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

In *Schlup*, the United States Supreme Court held that a habeas petitioner may raise a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims via the "miscarriage of justice" prong of the standard for excusing procedural default. 513 U.S. at 312–28. To raise such a claim, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). In turn, to establish the requisite probability, a habeas petitioner must establish that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* In so holding, the United States Supreme Court teaches that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare" and, even then, such a claim is "rarely successful." *Id.* at 324. Accordingly, an actual innocence claim requires a "substantial showing" and, "[t]o be credible, . . . requires [a] petitioner to support his

allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324, 330.

Tenner argues that Boyd's affidavit meets the *Schlup* standard and that his claim of actual innocence thus provides a "gateway" for review of Ground One, and consequently, Ground Two as well.[3] ECF No. 22 at 2. To support his argument, Tenner maintains that, when combined with (1) prior evidence and (2) jail records, as well as D.J.'s admission at one point that he talked to other inmates while "in the bullpen," Boyd's affidavit meets the quality of newly reliable evidence required by *Schlup*. *Id.* at 6.

Tenner's proffered "prior evidence" is a line of cross-examination by Glynn of Detective Timothy Graham ("Detective Graham"), during which Glynn asked Detective Graham about neighbors' claims that D.J. was involved in the murder. *Id.* at 7. The trial court interrupted this line of testimony on hearsay grounds, ECF No. 22-1 at 137; Glynn ultimately did not call the neighbors themselves based on a trial strategy that Tenner does not challenge in the instant federal habeas briefing. *Id.* at 8.[4] Tenner argues

---

[3]As discussed below in Section 4.2, Ground Two requires a tie to an independent constitutional violation to be actionable in federal habeas. Thus, Tenner seeks to cure his procedural default as to Ground One, which alleges a Sixth Amendment ineffective assistance of counsel claim, and then tie his Ground Two claim regarding Boyd's affidavit thereto in order to render it actionable. ECF No. 22 at 2.

[4]In two separate grounds ("Grounds Four and Five") raised in a motion to stay that was filed after his original habeas petition, Tenner challenged his appellate counsel's failure to raise this issue on direct appeal. ECF No. 5. In the motion to stay, Tenner admitted that neither Ground Four nor Ground Five was exhausted. *Id.* Consequently, in its screening order, ECF No. 6, the Court gave Tenner the choice to dismiss the entire action until all grounds were exhausted, or

that because "[t]he jury didn't hear exactly what the neighbors had said [and] . . . went into deliberations with only Det. Graham's impermissible opinion," the jury "abdicate[d] its role to weigh the evidence." *Id.* at 11.

The jail records, which Tenner attaches to his response brief, demonstrate that D.J. and Boyd were in jail at the same time. *Id.* at 9; ECF No. 22-1 at 217–18. Tenner alleges that Detective Graham and another individual interviewed Boyd in January 2018 and that Boyd subsequently identified D.J. from a lineup. *Id.* Additionally, Detective Graham testified that he met with D.J., who stated that he may have talked to other inmates while in the jail bullpen. ECF No. 22 at 10; ECF No. 22-1 at 198–99.

Tenner's *Schlup* argument misses the mark. As stated above, a *Schlup* claim requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 513 U.S. at 327. The United States Supreme Court further clarified that a *Schlup* claim must not present a "claim of innocence . . . by itself," but rather, the actual innocence claim must "depend[] critically on the validity" of the underlying constitutional violation. 513 U.S. at 315. The *Schlup* Court distinguished (1) a substantive actual innocence claim, where the claim is itself based on innocence or where "innocence . . . by itself provide[s] a basis for relief," from (2) a procedural innocence claim, where a petitioner argues that a procedural default should be excused because a constitutional violation probably resulted in the conviction of an innocent person, and thus warrants federal habeas review on the merits. *Id.* at 315–17.

---

to proceed on only the exhausted grounds. Tenner chose to proceed on only the exhausted grounds—Grounds One and Two—which are now before the Court. ECF No. 9.

The United States Supreme Court instructs that the specific items of newly reliable evidence proffered by the petitioner, coupled with the underlying statement of facts, illustrate the distinction between a true *Schlup* procedural innocence claim, versus a substantive actual innocence claim. *Id.* at 316. For example, in *Schlup,* to support his ineffective assistance of counsel argument, the petitioner identified four witnesses who his trial counsel failed to interview before trial and call at trial. *Id.* at 306 n.14. The Court found that the newly reliable evidence that the petitioner proffered in support of his procedural innocence claim was tied to his ineffective assistance of counsel claim as it was largely in the form of affidavits and statements from the same witnesses that his counsel had failed to interview and call. *See, e.g., id.* at 306–16 ("[The defendant's] trial counsel failed to conduct individual interviews with . . . the other inmates who told investigators that they had seen the killing. Moreover, counsel failed to interview Green about his statement . . . . In fact, counsel apparently failed to conduct individual interviews with any of the potential witnesses to the crime.").

Here, the facts underlying Ground One (and the independent constitutional violation) involve Tenner's claim that Glynn was ineffective by not impeaching Beilke with her prior criminal convictions. ECF No. 10 at 6 ("Appellate Counsel provided both the Trial Court and Appellate Court with substantial documentation of witness Misty Beilke's criminal record, which Trial Counsel never used to attack her credibility."). Tenner does not explain how his actual innocence claim based on Boyd's affidavit "depends critically on the validity" of his underlying ineffective assistance of counsel claim relating to impeachment of Beilke. *Schlup*, 513 U.S. at 315. In *Coleman v. Hardy*, the Seventh Circuit remanded for an evidentiary hearing where

the petitioner's assertion of innocence satisfied *Schlup* because it "depend[ed] critically on the validity of his ineffective assistance of counsel claim." 628 F.3d 314, 318 (7th Cir. 2010). There, like the facts in *Schlup*, the newly reliable evidence proffered by the petitioner had been disclosed to defense counsel prior to trial, but defense counsel chose not to use it. *Id.* at 322. That is simply not the case here, where trial counsel did not know (and could not have known) about Boyd's post-trial affidavit. Therefore, trial counsel could not have been ineffective in a manner sufficient to demonstrate that Boyd's affidavit is tied—let alone critically tied, as required by *Schlup*—to his alleged failure to impeach Beilke.[5]

Because Tenner's actual innocence claim does not depend critically upon an underlying constitutional violation, he does not present a viable *Schlup* procedural innocence claim. Therefore, his procedural default is not excused. Consequently, the Court must dismiss Ground One from this action due to Tenner's procedural default.

### 4.2 Ground Two – Newly Discovered Evidence

Respondent argues, and the Court agrees, that a standalone newly discovered evidence claim—divorced from an independent constitutional violation—is not actionable in federal habeas. ECF No. 19 at 9; *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for

---

[5] As with Tenner's argument regarding cross-examination of Detective Graham and the decision to call the neighbors, *see supra* n.4, Tenner raised in his original habeas petition, ECF No. 1, ineffectiveness of his appellate counsel for failure to argue that "Boyd's affidavit had demonstrated that there was a reasonable probability that a different result would be reached in a new trial" ("Ground Three"). ECF No. 6 at 3. As with Grounds Four and Five, Tenner acknowledged that Ground Three was unexhausted and chose to proceed on only the exhausted Grounds One and Two. *Id.*; ECF No. 9.

federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

Indeed, in his response brief, Tenner concedes that his newly discovered evidence claim may not proceed alone. ECF No. 22 at 17 ("Respondent correctly points out that Newly Discovered Evidence claims must be connected to a separate Constitutional error [and] cannot, standing alone, serve as grounds for Federal Relief."). Tenner argues, however, that the claim does not proceed alone, but is tied to a violation of his Sixth Amendment right to present a complete defense, including violations of the Sixth Amendment Confrontation Clause. *Id.* at 18. Unfortunately, Tenner did not present these constitutional arguments to the state courts; he argued only that Boyd's affidavit satisfied Wisconsin's standard for obtaining a new trial based on newly discovered evidence. ECF No. 19-2 at 9. "[T]he state courts must be apprised of the constitutional nature of the claim. If the facts presented do not evoke a familiar constitutional constraint, there is no reason to believe the state courts had a fair opportunity to consider the federal claim." *Anderson*, 471 F.3d at 815.

In *Anderson*, the Seventh Circuit instructs that courts should consider four factors in determining whether a petitioner fairly presented a federal claim to the state courts:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and

> 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* Before the state courts, Tenner argued solely the Wisconsin standard for a new trial as set forth in *McAlister* and the Circuit Court's weighing of Boyd's credibility. ECF No. 19-3. Tenner did not argue that he was unable to confront or cross-examine D.J., or any of the other witnesses against him. Moreover, nothing in the briefing, nor in the underlying statement of facts, would "evoke a familiar constitutional constraint and alert the state courts to a federal constitutional issue." *Anderson*, 471 F.3d at 815. And federal habeas relief is not available for errors of state law, such as Tenner's arguments regarding *McAlister*. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Thus, to the extent Tenner alleges a constitutional violation—whether under the Sixth Amendment or another provision—related to his newly discovered evidence claim, he has not procedurally exhausted it.

Accordingly, for similar reasons underlying the Court's analysis of Ground One, the Court must dismiss Ground Two for failure to tie the claim to any independent constitutional violation at trial.

5. **CONCLUSION**

For the reasons stated above, Respondent's motion to dismiss will be granted. Still, under Rule 11(a) of the Rules Governing Section 2254 Cases,[6] "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Tenner must make a "substantial showing of the denial of a constitutional right" by establishing that

---

[6]Rules Governing Section 2254 Cases in the United States District Courts (Feb. 1, 2010), https://www.uscourts.gov/sites/default/files/rules-governing-section-2254-and-section-2255-proceedings.pdf.

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

When the Court has denied relief on procedural grounds, as the Court does here, the petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court determines that no reasonable jurist would find it debatable that Tenner's newly discovered evidence argument is sufficiently tied to his sole exhausted constitutional claim: that Glynn was ineffective for failing to impeach Beilke with her criminal record. This finding applies to both Grounds One and Two. As a consequence, the Court is compelled to deny a certificate of appealability as to Tenner's amended petition.

Accordingly,

**IT IS ORDERED** that Petitioner Rondale D. Tenner's motion for extension of time, ECF No. 20, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Respondent Dylon Radtke's motion to dismiss, ECF No. 18, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Rondale D. Tenner's amended petition for a writ of habeas corpus, ECF No. 10, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Rondale D. Tenner's amended petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.